IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SHAMROCK HILLS, LLC, d/b/a SHAMROCK ROOFING AND CONSTRUCTION,<br><br>    Plaintiff,<br>v.<br><br>STATE OF IOWA, IOWA INSURANCE DIVISION, DOUG OMMEN, in his official capacity as Insurance Commissioner of the Iowa Insurance Division, and DAVID SULLIVAN, in his official capacity as Assistant Bureau Chief of the Iowa Insurance Division Market Regulation Bureau,<br><br>    Defendants. | No. 4:24-cv-00340-RGE-HCA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I.   INTRODUCTION

Plaintiff Shamrock Hills, LLC, a residential contractor, brings this lawsuit against Defendants State of Iowa, Iowa Insurance Division, Doug Ommen, in his official capacity as Insurance Commissioner of the Iowa Insurance Division, and David Sullivan, in his official capacity as Assistant Bureau Chief of the Iowa Insurance Division Market Regulation Bureau, challenging the constitutionality of Iowa's regulatory scheme prohibiting unlicensed residential contractors from acting as public adjusters. The Court finds this regulatory scheme is a valid regulation of professional conduct and does not infringe upon Shamrock Hills' First Amendment rights.

For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## II.   BACKGROUND

### A.   Factual Background

The Court accepts the facts alleged in Shamrock Hills complaint as true for the purpose of

considering Defendants' motion to dismiss. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

On July 2, 2024, Sullivan, acting as Assistant Bureau Chief of the Iowa Insurance Market Regulation Bureau, sent a warning notice to Shamrock Hills. Compl. ¶ 18, ECF No. 1. The letter stated the Bureau had "completed a review of [Shamrock Hills'] business activity and ha[d] identified activity consistent with unlicensed public adjusting" in violation of Iowa Code §§ 103A.71(3) and 522C.2(7). Defs.' Ex. A Supp. Mot. Dismiss, ECF No. 13-1. Following an inquiry by Shamrock Hills, Defendants provided a follow-up email containing a non-exhaustive list of Shamrock Hills' alleged wrongful actions. ECF No. 1 ¶ 23; Defs.' Ex. B Supp. Mot. Dismiss, ECF No. 13-2. The follow-up email stated the initial warning letter "provided a general guide of concerning language and actions to be avoided." ECF No. 13-2 at 1.

Additional facts are discussed below as necessary.

**B.     Procedural Background**

Shamrock Hills filed a complaint against the State of Iowa, the Iowa Insurance Division, Ommen, in his official capacity as Insurance Commissioner of the Iowa Insurance Division, and Sullivan, in his official capacity as Assistant Bureau Chief of the Iowa Insurance Division Market Regulation Bureau, challenging the constitutionality of Iowa Code §§ 103A.71(3) and 522C.2(7), claiming the statutes infringe upon Shamrock Hills' First Amendment freedom of speech rights (Count I) and are unconstitutionally vague under the Fourteenth Amendment (Count II). ECF No. 1 ¶ 36–68. Shamrock Hills is also seeking injunctive relief (Count III) and pursuing a declaratory judgment holding the statutes unconstitutional (Count IV). *Id.* Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss, ECF No. 10; Defs.' Br. Supp. Mot. Dismiss, ECF No. 10-1. Shamrock Hills subsequently filed its resistance to Defendants' motion to dismiss. Pl.'s Resist. Defs.' Mot. Dismiss, ECF No. 18.

Defendants filed a reply brief in support of the motion to dismiss. Defs.' Reply Supp. Mot. Dismiss, ECF No. 19.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim if a party fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). The aim of the plausibility standard "is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian*, 760 F.3d at 848 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).

Plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."

*Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Wright & Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

The Court must accept as true all factual allegations in the complaint but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79. "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

## IV. DISCUSSION

Defendants cite several procedural bases on which this case should be dismissed. The Court addresses the Eleventh Amendment immunity, Iowa Administrative Procedure Act, and abstention issues in turn before turning to the substantive claims.

### A. Eleventh Amendment Immunity

The Eleventh Amendment grants sovereign immunity to states in suits filed by citizens. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). The Eighth Circuit has interpreted this immunity applies to state agencies as well. *Texas Cmty. Bank, N.A. v. Missouri Dept. of Social Servs., Div. of Med. Servs.*, 232 F.3d 942, 943 (8th Cir. 2000); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Shamrock Hills names both the State of Iowa and the Iowa Insurance Division, a state agency, as defendants in the present suit. Eleventh Amendment sovereign immunity bars such a claim and Shamrock Hills does not contend otherwise in its reply. ECF No. 18 at 2. Because both the State of Iowa and the Iowa Insurance Division are immune from suit, the motion to dismiss is granted as to these Defendants.

4

### B. Iowa Administrative Procedure Act

A Federal court "must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction." *Thompkins v. Stuttgart School Dist. No. 22*, 787 F.2d 439, 441 (8th Cir. 1986) (quoting *Markham v. City of Newport News,* 292 F.2d 711, 716 (4th Cir.1961)) (internal quotation marks omitted). Defendants allege Shamrock Hills must exhaust all administrative remedies before proceeding in court. Defendants argue the warning letter sent to Shamrock Hills from the Iowa Insurance Division should be construed as a final agency action for which the sole remedy under state law is to seek judicial review in state court. ECF No. 10-1 at 5; ECF No. 13-1. Shamrock Hills contends the regulation on public adjusters itself is an unconstitutional infringement on its free speech rights. ECF No. 1 ¶ 48. Critically, Shamrock Hills' complaint would not change if Defendants had taken a different action or altered the content of the warning letter because the challenge is to the constitutionality of the statute itself, not a specific agency action. Because Shamrock Hills challenges the constitutionality of Iowa Code §§ 103A.71(3) and 522C.2(7), not the warning letter it received, Shamrock Hills' claims do not fall within the Iowa Administrative Procedure Act.

In *Climbing Kites LLC v. Iowa*, a business challenged an agency's implementation of a state law by claiming the agency implementation ignored certain provisions of state law. 739 F.Supp.3d 742, 760–61 (S.D. Iowa 2024). The court in *Climbing Kites* declined to "exercise jurisdiction over [the] state claim between citizens of the [S]tate of Iowa." *Id.* The court emphasized a plaintiff in federal court must seek to vindicate a federal right when seeking to enjoin a state official's actions. Unlike in *Climbing Kites*, here the plaintiff is seeking to vindicate a federal right. Further distinguishing *Climbing Kites*, Shamrock Hills is challenging a state law itself, not an agency implementation of a state law. Because Shamrock Hills directly asserts a federal right in challenging the constitutionality of a statute, not an agency action, it is not bound

by the limits of the Iowa Administrative Procedure Act.

    C.    **Abstention**

        1.    **Younger Abstention**

The Supreme Court has determined federal injunctive relief is "improper when a prosecution . . . is pending in state court at the time the federal suit is initiated." *Younger v. Harris*, 401 U.S. 37, 40–41 & n.2 (1971). "Where Younger abstention is otherwise appropriate, the district court generally must dismiss the action, not stay it pending final resolution of the state-court proceedings." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1251 (8th Cir. 2012). *Younger* abstention "only applies to three 'exceptional' categories of cases: (1) 'ongoing state criminal prosecutions;' (2) 'certain civil enforcement proceedings;' and (3) 'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Wassef v. Tibben*, 68 F.4th 1083, 1087 (8th Cir. 2023) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013)).

Regarding the second category, the Supreme Court has clarified federal courts are to apply *Younger* only in the presence of "particular state civil proceedings that are akin to criminal prosecutions." *Sprint*, 571 U.S. at 70. To determine whether a civil proceeding falls within this second category, a court must ask: (1) "was the action commenced by the State in its sovereign capacity?" (2) "Was the proceeding initiated to sanction the federal plaintiff for some wrongful act?" (3) "Are there other similarities to criminal actions, such as a preliminary investigation culminating in the filing of formal charges?" *375 Slane Chapel Road LLC v. Stone Cnty. Mo.*, 53 F.4th 1122, 1128 (8th Cir. 2022) (citing *Sprint*, 571 U.S. at 79–80).

The Supreme Court "reaffirmed that 'only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.'" *Sprint*, 571 U.S. at 70 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). The Court

6

has used the *Middlesex* factors to determine whether State civil proceedings are entitled to deference, finding proceedings are entitled to *Younger* abstention where: 1) there is an ongoing proceeding which is judicial in nature; 2) the proceeding "implicate[s] important state interests;" and 3) there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *accord Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010). However, the Court cautioned that "[d]ivorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings . . . [and] [t]hat result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention . . . is the exception, not the rule." *Sprint*, 571 U.S. at 81–82 (internal quotation marks omitted). The Court warned "[t]he three *Middlesex* conditions . . . [are] not dispositive; they [are], instead, *additional* factors appropriately considered by the federal court before invoking *Younger*." *Id.* at 81 (emphasis in original).

Applying these Supreme Court cases, the Eighth Circuit has fashioned a three-part inquiry for determining whether *Younger* abstention is appropriate: 1) "does the underlying state proceeding fall within one of the three exceptional circumstances where *Younger* abstention is appropriate?" 2) "If the underlying proceeding fits within a *Younger* category, does the state proceeding satisfy . . . the *Middlesex* factors?" And 3) "even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?" *375 Slane Chapel Road*, 53 F.4th at 1127 (internal quotation marks and citations omitted).

Defendants encourage this Court to abstain under *Younger* because of an ongoing civil enforcement action against Shamrock Hills. ECF No. 10-1 at 21–22. Defendants contend the action against Shamrock Hills constitutes an ongoing state civil proceeding which meets each of the three

*Middlesex* factors and is therefore entitled to *Younger* abstention. *Id.* Applying the Eighth Circuit framework, the Court begins with whether the nature of the state proceeding is quasi-criminal then turns to the *Middlesex* factors. Because the State proceeding does not fall within a narrow exceptional circumstance warranting abstention, the Court declines to abstain.

Defendants contend this action falls within the second *Younger* category, a civil enforcement proceeding. ECF No. 10-1 at 23. As set forth in the complaint, Defendants sent Shamrock Hills a warning notice. ECF No. 1 ¶ 18. In the notice, Sullivan stated, "further instances of misconduct will result in administrative violation(s) and a referral to law enforcement officials for consideration of criminal prosecution." Defs.' Ex. A at 4, ECF No. 13-1. In response to an inquiry by Shamrock Hills, Sullivan stated in a follow-up email "[t]he Bureau's initial letter of warning provided a general guide of concerning language and actions to be avoided." ECF No. 13-2 at 1. The email further stated "[i]t is required that Shamrock review their [] materials." *Id.*

While the warning letter was sent by the State in its sovereign capacity, the nature of the letter is inconsistent with a quasi-criminal proceeding entitled to abstention. First, it is unclear if the purpose was to sanction Shamrock Hills for actions it already took, or to warn of potential future consequences should Shamrock Hills fail to heed the warning in its actions going forward. In addition, any preliminary investigation conducted seemingly did not result in formal charges, further differentiating this warning letter from a quasi-criminal proceeding entitled to abstention.

While it appears this proceeding falls short of the required quasi-criminal standard, the Court assumes the proceeding does fall within the second *Younger* category for purposes of proceeding to the next stage of the inquiry—the *Middlesex* factors.

The first factor focuses on whether there is an ongoing proceeding which is judicial in nature. Therefore, in order for *Younger* to apply, the State proceeding must necessarily be ongoing.

The language of the letter, however, and the absence of subsequent proceedings indicate the letter constituted the totality of the proceeding. The follow-up email states Shamrock Hills is required to review its materials for language which runs afoul of state law, and describes the warning letter as a "general guide." Such language indicates no ongoing proceeding is occurring.

The language of the letter also indicates the proceeding is not judicial in nature. Defendants argue the proceeding is judicial in nature because Shamrock Hills could, under the Iowa Administrative Procedure Act, request a contested case to challenge the warning letter then seek judicial review after the agency process is complete. ECF No. 10-1 at 26. However, Defendants' assertion that Shamrock Hills would be the party to instigate the judicial proceeding is further evidence no such judicial-in-nature proceeding currently exists. Defendants concede "there is no pending administrative hearing before the Division." ECF No. 19 at 6. As discussed above, Shamrock Hills is not bound by the Iowa Administrative Procedure Act and therefore is not required to start a state judicial process in order to seek vindication for its federal rights. Because the proceeding does not meet the requirements of the first *Middlesex* factor, the Court need not proceed to the next two factors.

Because the warning letter does not constitute an ongoing proceeding which is quasi-criminal in nature and, even if it was quasi-criminal in nature, the proceeding is not judicial in nature, the Court declines to abstain.

### 2. Pullman Abstention

Pullman abstention is appropriate where a construction of the challenged state statute by a state court would avoid confronting the federal constitutional question. *Beavers v. Arkansas State Bd. Of Dental Exam'rs.*, 151 F.3d 838, 841 (8th Cir. 1998) (citing *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 510–11 (1972)). Abstention is only appropriate "where the issue of state law is uncertain." *Lake Carriers' Ass'n,* 406 U.S. at 511 (citation omitted). "If the statute is

not obviously susceptible of a limiting construction, then even if the statute has never [been] interpreted by a state tribunal . . . it is the duty of the federal court to exercise its properly invoked jurisdiction." *City of Houston v. Hill*, 482 U.S. 451, 468 (1987) (alteration in original) (internal quotation marks omitted). In addition, *Pullman* abstention is inappropriate where a state statute is being challenged for "abridging free expression." *Id.* at 467 (citation omitted).

*Pullman* abstention is inappropriate here for three reasons. First, Shamrock Hills claims its First Amendment rights to free expression is being infringed by this statute. Second, the statute at issue is not susceptible to a limiting construction which would avoid the federal constitutional issue. Third, the Iowa Supreme Court has previously interpreted this statute in a similar context and found no trouble construing its meaning. *See 33 Carpenters Constr., Inc. v. State Farm Life and Cas. Co.*, 939 N.W.2d 69, 79 (Iowa 2020) (finding "it is apparent that section 103A.71(3) prohibits residential contractors from acting as public adjusters"). For those reasons the Court declines to abstain under *Pullman*.

### D. First Amendment Claims

The First Amendment, enforced against the states through the Fourteenth Amendment, prohibits the enactment of statutes "abridging the freedom of speech." U.S. Const. amend. I. The level of scrutiny applied to a statute depends upon whether the statute targets speech based on its content. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Such content-based restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* Such a high standard reflects the principal that a state "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chi. v. Mosley*, 408 U.S. 92, 95 (1972).

First Amendment protections apply to commercial speech, however the level of protection afforded is less than the protection afforded to other forms of protected speech. *Central Hudson*

*Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562–63 (1980). When "communication is neither misleading nor related to unlawful activity," the state must show the restriction advances a substantial interest and the means employed must be proportional to that interest. *Id.* at 564. This lower standard flows from the principal that commercial speech is "an area traditionally subject to government regulation" and therefore is afforded only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978).

The Supreme Court has refused to regulate professional speech as a separate category under the First Amendment. *Nat'l. Inst. of Fam. and Life Advocs. v. Becerra*, 585 U.S. 755, 767–68 (2018). The Court made clear "[s]peech is not unprotected merely because it is uttered by professionals." *Id.* at 767 (internal quotation marks omitted). Instead, the traditional categories of speech regulation apply in the context of professional speech. The Court has recognized two circumstances where professional speech is accorded less protection. *Id.* at 768. The first category is where statutes "require professionals to disclose factual, noncontroversial information in their commercial speech." *Id.* (citing *Ohralik*, 436 U.S. at 455). This category includes rules which compel disclosures of "purely factual and uncontroversial information about the terms under which . . . services will be available." *Id.* (omission in original) (quoting *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio,* 471 U.S. 626, 651 (1985) (upholding a law requiring lawyers who advertised services on a contingency fee basis to inform clients they may be required to still pay some fees and costs)).

The second category recognizes "States may regulate professional conduct, even though that conduct incidentally involves speech." *Becerra*, 585 U.S. at 768. This category flows from the long-held recognition that "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or

11

carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502. To subject such commercial speech to heightened scrutiny "would make it practically impossible ever to enforce laws against agreements . . . and conspiracies deemed injurious to society." *Id.* The Court recognized "[w]hile drawing the line between speech and conduct can be difficult, [the] Court's precedents have long drawn it." *Becerra*, 585 U.S. at 769. "[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456.

The Court has warned "a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *NAACP v. Button*, 371 U.S. 415, 439 (1963). The Court in *Button* applied an early form of strict scrutiny to a law which targeted the non-commercial, litigation-related speech of the NAACP. *Id.*; *See Reed,* 576, U.S. at 167 (noting "[a]lthough *Button* predated our more recent formulations of strict scrutiny, the Court rightly rejected the State's claim" that invocation of professional regulation permitted the restraint on speech). "As with other kinds of speech, regulating the content of professionals' speech 'pose[s] the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information.'" *Becerra*, 585 U.S. at 771 (quoting *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 641 (1994)) (alteration in original). The Court warned states may attempt to instill professional license requirements as a pretext for "invidious discrimination of disfavored subjects." *Becerra*, 585 U.S. at 771 (quoting *Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 423–24 (1993)).

The main focus of the inquiry must therefore be whether this challenged regulation fits within one of the categories entitled to deference and whether there is any cause for concern underlying the regulation. As explained below, because the Iowa statute specifically targets professional conduct, merely incidentally burdens free speech—if at all—and does not carry a risk of suppressing unpopular ideas of invidious discrimination, Iowa's regulatory scheme is proper

under the First Amendment.

### 1.     Public Adjuster License Requirement

Shamrock Hills asserts Iowa's public adjuster regulatory scheme violates the First Amendment "because the business of residential contracting necessarily and inextricably involves speech and conduct." ECF No. 1 ¶ 33. Iowa Code § 103A.71(3) states:

> A residential contractor shall not represent or negotiate on behalf of, or offer or advertise to represent or negotiate on behalf of, an owner or possessor of residential real estate on any insurance claim in connection with the repair or replacement of roof systems, or the performance of any other exterior repair, exterior replacement, or exterior reconstruction work on the residential real estate.

Iowa Code § 103A.71(3). Shamrock Hills asserts Iowa Code § 522C.2(7) "regulates negotiating, advertising, soliciting, and advising, all of which involve communicative efforts." ECF No. 1 ¶ 37. Iowa Code § 522C.2(7) defines public adjuster as:

> 7. "Public adjuster" means any person who for compensation or any other thing of value acts on behalf of an insured by doing any of the following:
>     a. Acting for or aiding an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal property of the insured.
>     b. Advertising for employment as a public adjuster of first-party insurance claims or otherwise soliciting business or representing to the public that the person is a public adjuster of first-party insurance claims for loss or damage to real or personal property of an insured.
>     c. Directly or indirectly soliciting business investigating or adjusting losses, or advising an insured about first-party claims for loss or damage to real or personal property of the insured.

Iowa Code § 522C.2(7). The plain text of these statutes clearly targets professional conduct. Section 103A.71(3) prohibits residential contractors from acting as public adjusters, using the language of "shall not." Section 522C.2(7) defines a public adjuster as an individual who "acts on behalf of an insured by doing" any of an enumerating list of actions. Following *Giboney*, the mere fact that the illegal act of a residential contractor holding themselves out as a public adjuster is evidenced by words or speech does not invoke First Amendment protections. Iowa's regulatory

scheme therefore falls clearly within the second category of appropriate regulation of professional conduct with mere incidental impacts on speech.

The insurance industry is an area traditionally subject to government regulation. *See California State Auto Ass'n v. Maloney*, 341 U.S. 105, 110 (1951). Iowa is one of forty-five states with statutes requiring public adjusters to have a license. *33 Carpenters*, 939 N.W.2d at 77 (citing *Public Adjusters: Licensing and Education Requirements*, 0110 Surveys 78 (Dec. 2018)). The goal of public adjuster licensing statutes is to "curtail unethical and abusive practices by public adjusters who present[ ] danger to the public by chasing fires and soliciting clients under conditions of duress." *Id.* (citing *Bldg. Permit Consultants, Inc. v. Mazur*, 122 Cal.App.4th 1400, 1413 (Cal. Ct. App. 2004)) (internal quotation marks omitted) (alteration in original). These unethical and abusive practices include "price gouging[,] . . . collusion[,] . . . high-pressure sales tactics, fraud, and incompetence." *Id.* (citing *Mazur*, 122 Cal.App.4th at 1412) (internal quotation marks omitted) (alteration in original). Iowa's regulatory scheme sits within the long tradition of professional regulatory laws targeting the elimination of conduct deemed injurious to society. This law has a clear legitimate regulatory goal, and it is one reflected by the vast majority of states which have instituted similar laws. Such legitimate regulatory laws are not an infringement of the First Amendment.

### 2. Prohibition on Advertising

Having established the prohibition on unlicensed residential contractors from acting as public adjusters comports with the First Amendment, the Count next turns to Shamrock Hills' assertion that the advertising ban found in § 522C.2(7) abridges free speech. ECF No. 1 ¶ 39. Commercial speech is only afforded protection if it is for a lawful purpose. *See Central Hudson*, 447 U.S. at 562. Section 522C.2(7), read in conjunction with § 103A.71(3), prohibits unlicensed residential contractors from advertising themselves as public adjusters. Because Iowa may validly

prohibit a residential contractor from acting as a licensed public adjuster, any advertisement from a residential contractor holding themselves out as a public adjuster is necessarily not speech targeted at a lawful purpose. Indeed, Iowa Code § 103A.71(6)(a) states "[a] residential contractor violating this section is subject to [ ] penalties and remedies" and § 103A.71(6)(b) states "[a] violation of subsection 2 or 3 by a residential contractor is an unlawful practice." Iowa Code §103A.71(6)(a), (b).

This public adjuster regulatory scheme is analogous to the regulatory regime governing medical professionals in Iowa. Iowa Code § 147.74 prohibits the use of any professional title or abbreviation in advertisements and other writing by anyone who is not a licensed professional. Iowa Code § 147.74(1). The power to regulate a profession necessarily includes the power to prohibit advertisements from unlicensed individuals seeking to hold themselves out to the public as a member of the profession. Such speech is not protected by the First Amendment and therefore § 522C.2(7) is constitutional.

### 3. Iowa Constitutional Claim

Shamrock Hills also asserts the Iowa regulatory scheme violates the Iowa Constitution. ECF No. 1 ¶ 31–32. The Iowa Supreme Court has previously analyzed the scheme at issue in *33 Carpenters* and did not find it to be unconstitutional under the State Constitution. *See 33 Carpenters*, 939 N.W.2d at 77 (invalidating a contract entered into by an unlicensed contractor because Iowa Code §§ 522C and 103A.71 prohibited the contractor from acting as a licensed public adjuster). This Court follows the interpretation of the Iowa Supreme Court on this matter and declines to find the scheme unconstitutional under the Iowa Constitution.

Iowa Code §§ 522C.2(7) and 103A.71(3) constitute a valid professional regulation scheme targeting professional conduct. This conduct is an area traditionally subject to government regulation and no risk of the suppression of unpopular ideas exists resulting from this scheme.

Because this scheme fits well within a category of regulation the Supreme Court has deemed appropriate, Defendants' motion to dismiss this claim is granted.

### E. Vagueness

The Due Process Clause of the Fourteenth Amendment requires a statute "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that [they] may act accordingly" and "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). "[G]reater tolerance" is afforded to statutes "with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* "[T]he absence of criminal sanctions requires less literal exactitude in order to comport with due process." *Horn v. Burns and Roe*, 536 F.2d 251, 255 (8th Cir. 1976) (recognizing "ordinary terms" such as "professional negligence" and "professional services" to be sufficiently definite). Per the Eighth Circuit in *Horn*, a statute is void for vagueness when it is "so vague and indefinite as really to be no rule or standard at all." *Id.* at 256.

Where a party challenges a statute as both vague on-its-face and vague as-applied, the analysis must begin with the as-applied challenge. *Hoffman*, 455 U.S. at 495. This is because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.*

The analysis changes slightly when a federal court is charged with interpretation of a state statute. *Wainwright v. Stone*, 414 U.S. 21, 22 (1973). Where a state statute has already been interpreted by a state court, the federal court must determine vagueness "in the light of prior state

constructions of the statute." *Id.* at 22–23. This requires the federal court to "take the statute as though it read precisely as the highest court of the State has interpreted it." *Id.* (internal quotation marks omitted).

The Court begins with Shamrock Hills' as-applied vagueness challenge. The Iowa Supreme Court interpreted the meaning of Iowa Code §§ 522C.2(7) and 103A.71(3) in *33 Carpenters*. 939 N.W.2d at 77. Therefore, this Court is bound by the interpretation of the Iowa Supreme Court and considers Shamrock Hills' vagueness challenge in light of this previous construction. The Iowa Supreme Court began its interpretation by comparing the language in § 522C.2(7) with the language in § 103A.71(3) and concluded "it is apparent that section 103A.71(3) prohibits residential contractors from acting as public adjusters." *Id.* at 79. In support of this construction, the court found "[t]hese statutes regulate the same conduct, including representing or negotiating for the insured on insurance claims." *Id.* at 80. The court added "[w]e interpret these provisions together to hold that contracts entered into by a residential contractor acting as an unlicensed public adjuster are void." *Id.* Applying this construction, the court found statements such as 33 Carpenters' promise to "ADVOCATE on YOUR behalf" and "work directly with the insurance company to ensure all damaged areas are included in the report" "exemplifie[d] solicitation of business investigating losses and advising insureds regarding claims." *Id.* at 81. From this, the court concluded 33 Carpenters acted as an unlicensed public adjuster in violation of Iowa law. *Id.*

Applying this construction to the facts here, the Court finds §§ 522C.2(7) and 103A.71(3) does provide adequate warning to Shamrock Hills of what actions do and do not violate the statute. Per the Iowa Supreme Court, the statute clearly and unambiguously prohibits residential contractors from acting as public adjusters. The Iowa Supreme Court interpreted this prohibition to include soliciting business investigating losses and advising insureds regarding claims. The

17

follow-up email sent to Shamrock Hills included quotes such as "they helped me fight the insurance company," "we assist with insurance claims," "[w]e called Shamrock, and they took it from there," "[Shamrock Hills] dealt with our insurance company," and "[Shamrock Hills] was an effective representative and advocate, and thankfully encouraged us to not give up the claim effort." ECF No. 13-3 at 2–4, 13–14, 26, 88, 120.

Comparing Shamrock Hills' actions to the unambiguous prohibition in the statute against residential contractors acting as public adjusters, makes clear Shamrock Hills was properly on notice as to what actions were prohibited. Section 522C.2(7)(a) specifically notes "aiding an insured in negotiating" is an act reserved only for licensed public adjusters. This statutory language therefore provides sufficient guidance and standards to those charged with applying the law. Sections 522C.2(7) and 103A.71(3) are not so vague and indefinite as really to be no rule or standard at all. Therefore, under *Horn*, Shamrock Hills' as-applied vagueness challenge fails. Because Shamrock Hills' conduct is clearly proscribed, the Court does not proceed to the facial challenge. *Hoffman*, 455 U.S. at 495. Defendants' motion to dismiss the vagueness claim is granted.

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants the State of Iowa, the Iowa Insurance Division, Doug Ommen, and David Sullivan's Motion to Dismiss, ECF No. 10, is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 18th day of September, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE